# In the United States Court of Federal Claims

|  |  |  |
|---|---|---|
| KEVIN R. SCOTT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-892C |
| v. | ) | (Filed: March 14, 2025) |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Wojciech Z. Kornacki, Pentagon Law Office, Washington, DC, for Plaintiff.

Daniel Bertoni, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were Steven J. Gillingham, Assistant Director, and Patricia M. McCarthy, Director, for Defendant. Lieutenant Commander Breier W. Scheetz, General Litigation Division, Judge Advocate General's Corps, United States Navy, Of Counsel.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

The plaintiff, Lt. Col. Kevin Scott, retired from the United States Marine Corps in July 2018. Although Lt. Col. Scott held the rank of colonel (pay grade O-6) at the time of his retirement, the Secretary of the Navy ("Secretary") directed that Lt. Col. Scott be retired at the rank of Lieutenant Colonel (pay grade O-5), which he found was the highest grade Lt. Col. Scott had held in which he had served satisfactorily. See 10 U.S.C. § 1370 (a)(1).

Some four years after he retired, Lt. Col. Scott requested that the Board for the Correction of Naval Records ("BCNR" or "Board") correct his records to reflect a retirement at the rank of colonel. After the Board denied his application, Lt. Col. Scott filed the present action. He contends that the Secretary violated 10 U.S.C. § 1370 and Secretary of the Navy Instruction ("SECNAVINST") 1920.6C when the Secretary directed his retirement at a lower grade, and that the BCNR's decision to uphold the Secretary's decision was arbitrary, capricious, contrary to law, and unsupported by substantial evidence. See generally Compl., ECF No. 1.

Currently before the Court are the government's motion to dismiss Counts 1 and 2 of the complaint, which it alleges are nonjusticiable, and the parties' cross-motions for judgment on the administrative record. For the reasons set forth below, the government's Motion to Dismiss in Part and Cross-Motion for Judgment on the Administrative Record ("Def.'s MJAR"), ECF No. 11, are **GRANTED**, and plaintiff's Motion for Judgment on the Administrative Record ("Pl.'s MJAR"), ECF No. 8, is **DENIED**.

## BACKGROUND

### I.    Relevant Statutes and Regulations

With exceptions not relevant here, 10 U.S.C. § 1370 (a)(1) provides that "a commissioned officer . . . of the Army, Navy, Air Force, Marine Corps, or Space Force . . . shall be retired in the highest permanent grade in which such officer is determined to have served on active duty satisfactorily." Subsection (a)(2) of Section 1370 further specifies that the "determination of satisfactory service" forming the basis for the assigned retirement grade is made "[b]y the Secretary of the military department concerned, if," as in this case, "the officer is serving at or below the grade of major general or rear admiral." 10 U.S.C. § 1370 (a)(2).

SECNAVINST 1920.6C governs the administrative separation of officers in the Marine Corps. Admin. Rec. ("AR") App. at A1, ECF No. 6-1 (reproducing SECNAVINST 1920.6C). Enclosure 6 of the Instruction, entitled "Guidelines on Recommendations—Grade at Retirement" prescribes the process by which grades are determined for officers who are permitted to voluntarily retire in lieu of facing administrative separation. AR App. at A74–A78. It provides that in those circumstances, the determination of the last grade in which an officer served satisfactorily may be made without a Board of Inquiry, which is ordinarily required when an officer must show cause as to why they should be retained in active status in light of poor performance or misconduct. See 10 U.S.C. §§ 14902–14903; see also AR App. at A7, A74.

Enclosure 6 also states that "[a] recommendation that officers have or have not served satisfactorily in the grade currently held should be based on a determination made after considering all relevant factors, such as the nature of the misconduct and its effect on professional performance." AR App. at A74. Retirement in a lesser grade may be appropriate where "the officer's misconduct was serious enough to constitute a significant departure from the conduct required of officers of the Naval Service." Id. Such misconduct includes, among other examples, "an act or acts which bring discredit upon the armed services." Id.[1] "However, when the officer's record, in spite of the misconduct, is otherwise so meritorious as to demonstrate the officer served satisfactorily in the grade currently held, the recommendation should be for retirement in that grade." AR App. at A74–A75.

The Instruction also supplies a series of "specific factors" that "should normally be considered," in determining whether an officer served satisfactorily in their current grade. AR App. at A75. These include: the nature and severity of the misconduct; the relationship of the misconduct to, and its effect on, the performance of military duties; the officer's fitness reports and other parts of their service record that reflect performance in the current grade; the officer's time in current grade,

---

[1] Other examples of serious misconduct include: "abuse of special position of trust; . . . disregard by a superior of customary superior-subordinate relationships; acts or omissions that adversely affect the ability of the military unit or the organization to maintain discipline, good order, and morale or endanger the security of the United States or the health and welfare of other members of the Armed Forces; and deliberate acts or omissions that seriously endanger the capability, security, or safety of the military unit or health and safety of other persons." AR App. at A74.

and relation between such time and the time of misconduct; "[o]ther relevant matters presented"; and the recommendations of the officer's chain of command. Id.

SECNAVINST 1920.6C Encl. 6, § 1(c) provides procedural protections for officers requesting voluntary retirement who are "the subject of any substantiated adverse finding or conclusion from an officially documented investigation or inquiry." AR App. at A75–A76. The officer must be provided with notice of the factual basis for the adverse finding or conclusion, the retirement grade recommended by their chain of command, and a statement of their rights to submit a rebuttal. AR App. at A76. In addition, the officer has the right to confer with counsel and receive copies of any records or documents that are provided to the Secretary. See id.

If an officer chooses to submit a response, it is forwarded to the Chief of Naval Personnel along with any command recommendations. See id. The Chief of Naval Personnel will then review the voluntary retirement request and send the entire package along to the Secretary with a retirement grade recommendation. Id. "The final determination of retirement grade" then "rests exclusively with [the Secretary]." Id.


II.    **Facts**

Lt. Col. Scott enlisted in the Marine Corps in November 1984 and was commissioned as an officer in December 1992. AR 265, 190, 3, ECF No. 6. On August 1, 2015, he was promoted from the grade of lieutenant colonel to the grade of colonel. AR 3; see also AR 265. Beginning in October 2017, Lt. Col. Scott was assigned to serve temporary additional duty at MacDill Air Force Base in Florida with the J7 Directorate of the Joint Chiefs of Staff. See AR 275, 120.

It is undisputed that up to this point in his career, Lt. Col. Scott served with distinction. As noted in his motion for judgment on the administrative record, Lt. Col. Scott was deployed three times in support of Operation Iraqi Freedom, Operation Desert Shield, and Operation Desert Storm during his service. AR 77–78. He was selected several times for command positions, and was continuously promoted until he reached the rank of colonel. Id. He received numerous awards, including a bronze star. Id.

On October 14, 2017, Lt. Col. Scott visited the adult-oriented website Backpage.com, where he located a "prostitution advertisement." AR 133. Unbeknownst to Lt. Col. Scott, the listing had been placed by the Polk County Sheriff's Department as part of a sting operation. AR 120, 133. Lt. Col. Scott arranged to meet with an undercover detective whom Lt. Col. Scott believed to be a prostitute. Id. Lt. Col. Scott drove to the assignation in his government-funded rental car and solicited the officer to engage in sexual intercourse in exchange for a payment of $80. Id. Lt. Col. Scott was then arrested and cited for soliciting another to perform a lewd act, in violation of Fla. Stat. § 796.07(2)(f). AR 3, 120.

Apparently, Lt. Col. Scott's arrest pursuant to the Polk County Sheriff's sting operation (dubbed "Operation No Tricks No Treats"), gained "nation-wide media attention." AR 133; see, e.g., Howard Altman, Marine Colonel on Temporary Duty at CentCom Arrested in Polk Prostitution Sting, Tampa Bay Times (Oct. 17, 2017), https://www.tampabay.com/news/military/macdill/Marine-colonel-on-temporary-duty-at-CentCom-arrested-in-Polk-prostitution-sting_161737500/. As a result

of Lt. Col. Scott's arrest, and the attendant publicity, he was removed from the Joint Service and returned to the Marine Corps. See AR 133.

A month after his arrest, on November 20, 2017, Lt. Col. Scott submitted a "voluntary retirement request in lieu of further administrative processing for cause." AR 123–24. In his request, Lt. Col. Scott explicitly acknowledged that he "under[stood] that the Secretary of the Navy may retire [him] in a lesser grade than [he] currently hold[s] and that the retirement grade will be the highest grade in which [he] served satisfactorily." AR 123. He further admitted that he had "committed misconduct" and that his actions on October 14 constituted "Conduct Unbecoming of an Officer and Gentleman," within the meaning of Article 133 of the Uniform Code of Military Justice ("UCMJ"). Id.

On December 7, 2017, Lt. Col. Scott submitted a "statement of service and character supporting voluntary retirement" for consideration by the Secretary. AR 125–27. In it, he described his accomplishments and community service, and provided statements attesting to his good character. He "fully acknowledge[d] and accept[ed] responsibility for the flawed decision made on 14 October 17 and promise[d] to 'go forward' in the positive manner that preceded the incident." AR 125. He closed his statement with a "sincere[] appeal to the discretion and judgment of [the Secretary's] senior leadership when reviewing [his] request for voluntary retirement in the grade of Colonel in lieu of further proceeding." AR 126.

Lieutenant General ("Lt. Gen.") Mark A. Brilakis, the Commander of U.S. Marine Forces Command, reviewed Lt. Col. Scott's request and the audio of the interview made by the arresting officer, AR 122, and counseled Lt. Col. Scott for his solicitation, "violations of Article 92 (violation of a lawful order), Article 133 (Conduct unbecoming), and Article 134 (Unspecified), Uniform Code of Military Justice (USCMJ), and his violation of Florida statute 796.07.2F," AR 120. Lt. Gen. Brilakis made a formal report of misconduct dated December 8, 2017, which Lt. Col. Scott signed and acknowledged. AR 133. Lt. Gen. Brilakis recommended to the Secretary (through the Commandant of the Marine Corps) that Lt. Col. Scott's request for voluntary retirement be granted. AR 122. He also recommended, however, that Lt. Col. Scott be retired as a lieutenant colonel, which he said was "the last grade in which he served satisfactorily." AR 122, 132.

Despite signing a statement detailing his misconduct and representing that he chose not to make a rebuttal, Lt. Col. Scott later exercised his right to submit a statement of rebuttal on December 14, 2017. See AR 134. In it, Lt. Col. Scott represented that he had "coordinated" what he called "the appointment" on October 14, to obtain "a pressure massage of his left hip area." Id. According to Lt. Col. Scott, he had run seven miles and swam in a local pool earlier that day, which caused him to experience "intense pain in [his] left hip area," presumably leading him to seek relief through a "pressure massage." Id.

On January 19, 2018, the Assistant State Attorney reduced the charge against Lt. Col. Scott. AR 89; see also AR 8. Instead of charging him with a violation of Fla. Stat. § 796.07(2)(f), the amended charge was based on Fla. Stat. § 796.07(2)(e). AR 89.[2] Lt. Col. Scott pled nolo contendere

---

[2] The former provision, Fla. Stat. § 796.07(2)(f), makes it unlawful "to solicit, induce, entice, or procure another to commit prostitution, lewdness, or assignation." It designates a first violation as a misdemeanor of the first degree, punishable by imprisonment not exceeding one year and a fine not

to the amended charge. Id. Adjudication was withheld, and Lt. Col. Scott was placed on probation for six months. Id.

In the meantime, on February 21, 2018, the Deputy Commandant for Manpower and Reserve Affairs, Lt. Gen. M.A. Rocco, endorsed Lt. Gen. Brilakis's recommendation that Lt. Col. Scott be permitted to voluntarily retire at the grade of lieutenant colonel. AR 120–21. In a memorandum to the Assistant Secretary of the Navy, Lt. Gen. Rocco explained that his recommendation was based on a review of the Report of Misconduct that Lt. Gen. Brilakis had prepared, as well as Lt. Col. Scott's retirement request and his chain of command's endorsements. AR 121. He explained that "[a]lthough [Mr.] Scott's military service was generally honest and faithful, he spent only 26 months in his current grade before his misconduct." Id. He opined that the "significant negative aspects of his conduct as a colonel and his relatively brief tenure in his current grade weigh in favor of retiring him in a lesser grade." Id.

On March 1, 2018, the Secretary of the Navy adopted the recommendations of Lt. Gen. Brilakis and Lt. Gen. Rocco. AR 119. He permitted Lt. Col. Scott to voluntarily retire in lieu of administrative separation, but "in the lesser paygrade of lieutenant colonel, separation code RNC1— Voluntary Retirement Authorized by, But Not Required by Law (Unacceptable Conduct) with an Honorable characterization of service." Id. Lt. Col. Scott completed his period of probation on June 6, 2018, and was retired on July 31, 2018. See AR 5.

III. **The Board's Decision**

In a letter dated August 24, 2022, Lt. Col. Scott applied to the Board to correct his records to reflect that he was retired at the grade of colonel. AR 39; see also AR 27–32. In considering Lt. Col. Scott's application, the Board reviewed, among other documents: his November 20, 2017 request to voluntarily retire; Lt. Gen. Brilakis's December 8, 2017 counseling statement and report of misconduct; Lt. Col. Scott's December 14, 2017 response to Lt. Gen. Brilakis's counseling statement; the Polk County Circuit Court's adjudication of the charge against Lt. Col. Scott; Lt. Gen. Rocco's February 21, 2018 endorsement of Lt. Gen. Brilakis's recommendation that Lt. Col. Scott be retired at a lower grade; and the March 1, 2018 decision of the Secretary retiring Lt. Col. Scott at the grade of lieutenant colonel. AR 3–5. The Board also reviewed an advisory opinion from the Military Personnel Law Branch, AR 6–7, 21–25, and Lt. Col. Scott's rebuttal of that opinion, AR 7, 27–32.

The BCNR rejected Lt. Col. Scott's request for relief. AR 2–12. It found that "[g]iven the nature of [Lt. Col. Scott]'s misconduct in the grade of Colonel, the [Secretary]'s determination that

---

exceeding $1000. Fla. Stat. § 796.07(5)(a)(1); see Fla. Stat. §§ 775.082(4)(a), 775.083(1)(d). The latter provision, Fla. Stat. § 796.07(2)(e), makes unlawful "[f]or a person 18 years of age or older to offer to commit, or to commit, or to engage in, prostitution, lewdness, or assignation" and a misdemeanor of the second degree on a first offense, punishable by imprisonment not exceeding 60 days and a fine not exceeding $500. Fla. Stat. § 796.07(4)(a)(1); see Fla. Stat. §§ 775.082(4)(b), 775.083(1)(e).

his service in that grade was unsatisfactory was rationally based and supported by the evidence." AR 8. It rejected Lt. Col. Scott's arguments that some of the information before the Secretary was inaccurate or misleading. Id. In addition, the Board found Lt. Col. Scott's assertion that he was attempting to procure a pressure massage for his hip during his encounter with the undercover officer was not credible. AR 9. It reasoned that Lt. Col. Scott would not have admitted that he violated UCMJ Article 133 if he had been seeking only a massage. Id. The Board further observed that Lt. Gen. Brilakis had reviewed an audio file of Lt. Col. Scott's interview with the arresting officer, which evidently did not support Lt. Col. Scott's explanation of his intentions. Id.

Based on the foregoing, the Board recommended against any correction of Lt. Col. Scott's records. On April 12, 2023, the Secretary indicated his concurrence with the Board's recommendation and directed that no corrective action be taken on Lt. Col. Scott's naval record. AR 12.

## IV.     The Present Action

Lt. Col. Scott filed the present complaint on June 6, 2024. In Count 1, he alleges that the Secretary's decision to retire him at the grade of lieutenant colonel rather than colonel violated 10 U.S.C. § 1370. Compl. ¶¶ 75–80. Specifically, Lt. Col. Scott alleges, "the Secretary of the Navy used erroneous, incomplete, and dated information from the report of misconduct to determine Plaintiff's highest retirement rank." Id. ¶ 77. Similarly, in Count 2, Lt. Col. Scott claims that—in directing that he be retired at the grade of lieutenant colonel—the Secretary failed to consider relevant factors set forth in SECNAVINST 1920.6C, and instead "relied on incomplete, exaggerated, and erroneous information when determining Plaintiff's retirement rank." Id. ¶¶ 81–90. Finally, in Count 3, he alleges that the BCNR's decision denying him relief was arbitrary and capricious, and an abuse of discretion. Id. ¶¶ 91–98.

Lt. Col. Scott filed a motion for judgment on the administrative record on September 9, 2024. Pl.'s MJAR On October 21, 2024, the government filed a motion to dismiss Counts 1 and 2 of the complaint on the grounds that they presented issues that are nonjusticiable, as well as a cross-motion for judgment on the administrative record and a response to Lt. Col. Scott's motion for judgment on the administrative record. Def.'s MJAR.

All of the motions are fully briefed. The Court has determined that oral argument is not necessary.

## DISCUSSION

## I.     Jurisdiction

Under the Tucker Act, the Court of Federal Claims has jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). While the

Tucker Act waives the sovereign immunity of the United States to allow a suit for money damages, United States v. Mitchell, 463 U.S. 206, 212 (1983), it does not confer any substantive rights on a plaintiff, United States v. Testan, 424 U.S. 392, 398 (1976). Therefore, a plaintiff seeking to invoke the court's Tucker Act jurisdiction must identify an independent source of a substantive right to money damages from the United States arising out of a contract, statute, regulation, or constitutional provision. Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1306 (Fed. Cir. 2008).

The statutory basis for Lt. Col. Scott's claim is 10 U.S.C. § 1370. Because 10 U.S.C. § 1370 establishes mandatory requirements regarding the calculation of retirement benefits, it is a money-mandating statute that, in conjunction with the Tucker Act, vests this court with jurisdiction. Lewis v. United States, 458 F.3d 1372, 1376 n.2 (Fed. Cir. 2006) (observing that retirement pay claims are brought under money-mandating statutes and citing 10 U.S.C. § 1370 as an example of such a statute); see also Bader v. United States, 160 Fed. Cl. 529, 542 (2022), aff'd, 97 F.4th 904 (Fed. Cir. 2024); Gersten v. United States, 173 Fed. Cl. 760, 765 (2024). Accordingly, this Court has jurisdiction over Lt. Col. Scott's claims seeking monetary relief for what he alleges was an improper retirement grade determination.


## II.     The Government's Motion to Dismiss

As noted above, Counts 1 and 2 of Lt. Col. Scott's complaint directly challenge the Secretary's determination that his performance at the grade of colonel was not satisfactory. The government has moved to dismiss Counts 1 and 2 in accordance with RCFC 12(b)(6), arguing that disputes about the Secretary's determination that his service in the rank of colonel was not satisfactory are nonjusticiable. The Court agrees.

As the court of appeals has observed, "the existence of jurisdiction does not confirm the court's ability to supply relief." Murphy v. United States, 993 F.2d 871, 872 (Fed. Cir. 1993). For the court to provide relief, "[t]he issue [presented] must also be justiciable." Id. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" Voge v. United States, 844 F.2d 776, 780 (Fed. Cir. 1988) (citations omitted).

"Justiciability is a particularly apt inquiry when one seeks review of military activities." Murphy, 993 F.2d at 872. "[J]udicial review [of a service Secretary's decision] is only appropriate where the Secretary's discretion is limited, and Congress has established 'tests and standards' against which the court can measure his conduct." Murphy, 993 F.2d at 873 (citing Sargisson v. United States, 913 F.2d 918, 922 (Fed. Cir. 1990) and Voge, 844 F.2d at 780). "Unless such a test or standard is provided, courts must abstain," id., because "the merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review," Adkins v. United States, 68 F.3d 1317, 1322 (Fed. Cir. 1995).

These principles dictate that Lt. Col. Scott's challenge to the Secretary's retirement grade determination is nonjusticiable. There are no standards or tests within the institutional competence of the judiciary that can be employed to decide whether an officer's service at a particular grade has

been satisfactory. Congress has determined that the ultimate responsibility for determining an officer's grade at retirement is with the Secretary, specifying that "[t]he determination of satisfactory service of an officer in a grade . . . shall be made . . . by the Secretary of the military department concerned." 10 U.S.C. § 1370(a)(2); see Voge, 844 F.2d at 780 (observing that the "'ultimate responsibility' for making the determination whether to terminate [special pay for military medical officers] was explicitly vested by Congress in the military"). And SECNAVIST 1920.6C Encl. 6, § 1(d) explicitly states that "[t]he final determination of retirement grade rests exclusively with [the Secretary]." AR App. at A76.

Further, the determination whether an officer who engaged in misconduct served satisfactorily at a particular grade requires making judgments about military matters. See Voge, 844 F.2d at 780 (observing that "many military and medical factors went into the decision to deny" special pay to the plaintiff, and that "it would be singularly inappropriate to second-guess the judgment of the military medical officers involved"). Here, for example, the Secretary had to decide whether Lt. Col. Scott's misconduct "was serious enough to constitute a significant departure from the conduct required of officers of the Naval Service." SECNAVINST 1920.6C Encl. 6, § 1(a); AR App. at A74. He had to assess the nature and severity of the misconduct and its relationship and effect on Lt. Col. Scott's performance of his military duties. Further, he had to assess whether Lt. Col. Scott's overall record was otherwise so meritorious that his service was satisfactory notwithstanding his misconduct. These are matters that are not within the purview of this Court. Cf. Sargisson, 913 F.2d at 922 (explaining that "[a] court lacks the special expertise needed to review reserve officers' records and rank them on the basis of relative merit").

To be sure, "if a statute, regulation, or instruction specifies the particular procedure to be followed in personnel actions, and the plaintiff alleges that the required procedure was not followed, a judicial remedy may be available." Antonellis v. United States, 723 F.3d 1328, 1332 (Fed. Cir. 2013). That is because "[w]hen a party asserts that the military violated a specific procedure mandated by statute or regulation, 'the test[s] or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations.'" Id. (alteration in original) (quoting Adkins, 68 F.3d at 1323).

In his motion, Lt. Col. Scott asserts that the Secretary's alleged reliance on erroneous or incomplete information in making his determination was "a violation of SECNAVINST 1920.6C." Pl.'s MJAR at 12. However, he neither cites nor quotes from any specific procedural requirements in the Instruction that were allegedly violated. See id.; see also Voge, 844 F.2d at 781 (declining to consider the accuracy or reliability of service records relied on to determine whether to deny plaintiff special pay because by doing so the court was "passing on the merits of the decision to deny [the special pay] which was first and last for the Navy").

In short, the decision regarding Lt. Col. Scott's retirement grade "is like thousands of other routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with." Voge, 844 F.2d at 780 (citations omitted). Therefore, Counts 1 and 2 of the complaint, which directly challenge the Secretary's retirement grade determination, must be dismissed. See Bader, 160 Fed. Cl. at 543 (holding that to the extent that plaintiff was asking the court to re-evaluate the merits of his Officer Grade Determination, that claim was nonjusticiable.); Gersten, 173 Fed. Cl. at 766 (finding a challenge to the determination of retirement grade nonjusticiable).

8

### III.    The Decision of the BCNR

In addition to his nonjusticiable claims objecting to the Secretary's determination that his service in the rank of colonel was not satisfactory, Lt. Col. Scott contends that the Board's decision declining to correct his records was arbitrary and capricious, and an abuse of discretion. Pl.'s MJAR at 15–18. Specifically, he argues that the Board violated "its 10 U.S.C. § 1552 mandate" by failing to provide him with relief when he "presented [the Board] with clear errors and injustices." Id. at 15.

For the reasons set forth below, the Court finds Lt. Col. Scott's arguments unpersuasive. The Board carefully considered all of his allegations of error and injustice and explained why it found them without merit. Because the Board's findings were supported by substantial evidence and consistent with law, the Court will grant the government's motion for judgment on the administrative record.

### A.    Standard of Review

The Court of Federal Claims reviews decisions of military correction boards based on the administrative record. See, e.g., Walls v. United States, 582 F.3d 1358, 1367 (Fed. Cir. 2009). It applies a deferential standard of review that is "limited to determining whether a decision of the Correction Board is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed. Cir. 2011) (quoting Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)); see also Chappell v. Wallace, 462 U.S. 296, 303 (1983) (establishing that a decision of the Board for the Correction of Naval Records is "subject to judicial review" and may be set aside if it is "arbitrary, capricious or not based on substantial evidence").

"An agency's decision is arbitrary and capricious when the agency decision-maker 'entirely fail[s] to consider an important aspect of the problem, offer[s] an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" Kelly v. United States, 69 F.4th 887, 894–95 (Fed. Cir. 2023) (alterations in original) (quoting Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). The application of the arbitrary and capricious standard "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence," Heisig, 719 F.2d at 1157, i.e., by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Strand v. United States, 951 F.3d 1347, 1351 (Fed. Cir. 2020) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). To succeed in a challenge to a military correction board's decision, a plaintiff must demonstrate by "cogent and clearly convincing evidence" that the Board's decision was arbitrary and capricious. Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986).

### B.    Lt. Col. Scott's Arguments

As noted, the Board found that in light of the nature of Lt. Col. Scott's misconduct while serving in the grade of colonel, the Secretary's determination that his service in that grade was not satisfactory "was rationally based and supported by the evidence." AR 8. The Board found that Lt. Col. Scott "did, in fact, solicit an undercover law enforcement officer whom he believed to be a

prostitute to commit a lewd act in exchange for money." Id. It further found that "he used a government rental vehicle while pursuing this endeavor." Id. Finally, the Board observed, Lt. Col. Scott had admitted that his actions constituted conduct unbecoming an officer within the meaning of Article 133, UCMJ. Id.; see also AR 123.

Each of these findings is supported by substantial evidence. Indeed, Lt. Col. Scott does not seriously challenge their accuracy. These facts—without more—supply a reasonable basis for the Board's decision that there was no error in the Secretary's determination that Lt. Col. Scott's service in the grade of colonel was less than satisfactory. Further, the Board reasonably rejected Lt. Col. Scott's claims concerning the accuracy of the information that was before the Secretary. In each instance, the "inaccuracies" Lt. Col. Scott identifies were either correct statements of fact and/or in any event immaterial.

For example, Lt. Col. Scott contends that the Report of Misconduct prepared by Lt. Gen. Rocco "erroneously stated that [he] was cited and arrested for soliciting prostitution—even though the charge was downgraded." Pl.'s MJAR at 6. He argues that because the Report did not state that the charge was ultimately downgraded, it "exaggerated the actual misconduct." Id. at 15. Relatedly, Lt. Col. Scott contends that the Secretary "improperly considered that he was counseled for violating Florida statute 796.07.2F—whereas [Mr.] Scott was never found guilty and never adjudicated of violating this statute." Id. at 13 (citing AR 89).

However, Lt. Gen. Rocco's recommendation that Lt. Col. Scott be retired at a lower rank was not based on the seriousness of the charges pursued by the local prosecutor. Lt. Col. Scott was retired at the rank of lieutenant colonel because his actions on October 14, 2017, were inconsistent with the military's expectations for an officer who has achieved the rank of colonel.

There is also no reason to believe that the Secretary's determination was based on the charging decisions made by local law enforcement officials or the outcome of any criminal proceedings. As the Board explained, "[t]he degree of misdemeanor of which [Lt. Col. Scott] was convicted under Florida law, upon which [Lt. Col. Scott] seems to assign significant importance, had literally no relevance to the issue at hand." AR 10. It further noted that "[Lt. Col. Scott]'s conduct was punishable by more than a year of confinement and a dismissal—it was not misdemeanor-level misconduct in the military." Id.

Similarly unpersuasive is Lt. Col. Scott's assertion that the Secretary based his decision on inaccurate or incomplete information about the length of his service as a colonel. According to Lt. Col. Scott, Lt. Gen. Rocco's report "incorrectly stated that [he] only served 26 months in the rank of Colonel." Pl.'s MJAR at 2. Lt. Col. Scott instead argues that "he served for 30 months and 21 days in the rank of Colonel (August 1, 2015 and February 21, 2018) by the time the report was completed" and had served 36 months by the time of his retirement in July 2018. Id. Lt. Col. Scott contends that the Navy erred when it failed to analyze what he characterizes as an "additional nine months of exemplary service" between the day of his encounter with the undercover police officer in October 2017 and July 2018 when his retirement became final. Id. at 13.

Lt. Col. Scott's argument misstates the record. Lt. Gen. Rocco's report did not state that Lt. Col. Scott had served 26 months in total at the rank of colonel. As the Board observed, it accurately stated that Lt. Col. Scott had "spent only 26 months in grade before his misconduct." See AR 9

(emphasis added). And although Lt. Col. Scott continued to serve for about ten months after the events of October 14, 2017, the Board noted, he was on probation for six of those months, spending part of the period completing a human trafficking class as required by the Florida court. AR 10. The Board further opined that he undoubtedly spent several of his last 10 months preparing himself to retire and on terminal leave. Id. It reasonably concluded that "[t]here was nothing that [Lt. Col. Scott] could have done within that limited period, during which he would not have been entrusted with significant responsibilities, which would have made his service as a Colonel satisfactory," and that his misconduct "was far more severe than he apparently believes it to be, especially for an officer of his grade and responsibility." Id.

Lt. Col. Scott also complains that the reports prepared by Lt. Gen. Brilakis and Lt. Gen. Rocco were misleading because they referenced the fact that Lt. Col. Scott was counseled regarding Articles 92, 133, and 134 of the UCMJ, without clarifying that Article 133 was the only provision of the UCMJ that he acknowledged violating. Pl.'s MJAR at 6. The Board rejected Lt. Col. Scott's argument that there was anything misleading about the UCMJ references within these reports. AR 8. Rather, the reports accurately reflected the counseling he received and also accurately stated that he acknowledged violating Article 133. The BCNR further noted that it should have been apparent to Lt. Col. Scott, given his experience, that his conduct was a violation of Articles 92 and 134 of the UCMJ. See id.

The BCNR also addressed and reasonably rejected Lt. Col. Scott's argument that the finding that his performance at the rank of colonel was not satisfactory is inconsistent with the honorable characterization of his service overall. As the Board explained:

> [T]he entirety of [Lt. Col. Scott]'s career was irrelevant to evaluating the quality of his service as a Colonel, which was the only relevant assessment in determining whether he should have been retired in that grade. The entirety of [Lt. Col. Scott]'s career got him promoted to Colonel and undoubtedly resulted in favorable consideration of his retirement request with an honorable discharge despite his commission of misconduct which could have warranted a lesser characterization of his service.

AR 10.

Lt. Col. Scott further argues that the Board's finding that he obtained a reduction in the charge against him through a plea bargain is arbitrary and that there is no evidence in the administrative record that supports the Board's assertion. Pl.'s MJAR at 17. The Board reasonably concluded, however, that it was "patently obvious" from the state court record "and from the fact that [Lt. Col. Scott] pled [nolo contendere] to a lesser offense when he claimed to be only seeking a therapeutic massage so soon after his arrest, that this was the result of a plea bargain." AR 9 n.6. More importantly, whether or not the reduction in the charge was the product of a plea bargain has no bearing on whether Lt. Col. Scott committed the misconduct with which he was charged and which he admitted violated Article 133 of the UCMJ—i.e., using a government rental vehicle to drive to a meeting with a woman he thought was a prostitute and offering to pay her $80 to have sexual intercourse. AR 9.

Finally, in his combined response and reply brief, Lt. Col. Scott argues for the first time that under SECNAVINST 1920.6C the Secretary was obligated to "document [his] analysis of all of

the . . . retirement paygrade determination factors." Pl.'s Resp. at 5, ECF No. 12. He also argues that when the Secretary made his determination, he "failed to assess the severity of [Mr.] Scott's misconduct, [and its] effect on the performance of his duties," as well as "all fitness reports, time in grade, and chain of command recommendations." Id. at 6 (citing AR 121); see also id. at 12–13. Both arguments lack merit.

First, Lt. Col. Scott identifies no language in SECNAVINST 1920.6C that required the Secretary to document the analysis he employed when he made his retirement pay grade determination. Second, while the Instruction provides a list of six factors that "should normally be considered" when "considering whether an officer served satisfactorily in the grade currently held" it does not make consideration of any of those factors mandatory. AR App. at A75.

In any event, "when contesting the process and procedures of military proceedings, the plaintiff bears the burden to overcome the 'strong, but rebuttable, presumption' that the military discharges its duties 'correctly, lawfully, and in good faith.'" Bernard v. United States, 59 Fed. Cl. 497, 501 (2004), aff'd, 98 F. App'x 860 (Fed. Cir. 2004) (quoting Hary v. United States, 618 F.2d 704, 707 (Ct. Cl. 1980)). Lt. Col. Scott has not overcome that presumption. To the contrary, in this case there is every reason to believe that the Secretary did consider the factors set forth in the Instruction when making his determination given that the report and recommendation prepared by Lt. Gen. Rocco for the Secretary's consideration expressly addressed them. AR 120–21.

The Court has considered the other arguments in Lt. Col. Scott's briefs and finds them without merit. It will therefore grant judgment on the administrative record to the government as to Count 3 of his complaint.

## CONCLUSION

For the reasons set forth above: 1) the government's motion to dismiss in part pursuant to RCFC 12(b)(6) is **GRANTED**; 2) plaintiff's motion for judgment on the administrative record is **DENIED**; and 3) the government's cross-motion for judgement on the administrative record is **GRANTED**.

The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge